1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
2


3    _____
     GREEN TREE SERVICING, LLC,
4                    PLAINTIFF

5        Vs.                              CIVIL NO.
                                          15-938 (PGS)
6    DAVID & JULIE CARGILLE,
                     DEFENDANTS
7    _____


8
                             **OCTOBER 13, 2015**
9                            CLARKSON S. FISHER COURTHOUSE
                             402 EAST STATE STREET
10                           TRENTON, NEW JERSEY  08608


11


12
     B E F O R E:      THE HONORABLE PETER G. SHERIDAN
13                     U.S. DISTRICT COURT JUDGE
                       DISTRICT OF NEW JERSEY

14

15   A P P E A R A N C E S:

16       KML LAW GROUP, PC
         BY:  DENISE CARLON, ESQUIRE
17       FOR THE PLAINTIFF

18       DAVID CARGILLE, ESQUIRE
         PRO SE
19


20

21   **HEARING ON MOTION TO DISMISS/MOTION TO REMAND**

22

23                     Certified as true and correct as required
                       by Title 28, U.S.C. Section 753
24                     /S/ Francis J. Gable
                       FRANCIS J. GABLE, C.S.R., R.M.R.
25                     OFFICIAL U.S. REPORTER
                       (856) 889-4761

1          THE COURT:  So, this is Green Tree Servicing versus

2     Cargille.   So, the first thing we should do is enter

3     appearances, and we will start with the plaintiff.

4          MS. CARLON:  Good afternoon, your Honor, Denise

00:01  5     Carlon, KML Law Group, for the plaintiff Green Tree Servicing.

6          THE COURT:  Good afternoon, Ms. Carlon.

7          For the defendants?

8          MR. CARGILLE:  We're appearing pro se, your Honor.

9     So, I'm David Cargille.

00:01  10          MS. CARGILLE:  Julie Cargille.

11          THE COURT:  Okay.  Good afternoon.

12          MR. CARGILLE:  I do want to let the Court know that

13     I'm an admitted attorney admitted in New York, but not in New

14     Jersey.

00:02  15          THE COURT:  All right.  Welcome.

16          MR. CARGILLE:  Thank you, your Honor.

17          THE COURT:  So, it's your motion to dismiss, Mr.

18     Cargille; do you wish to be heard?

19          MR. CARGILLE:  Your Honor, I think this is one of

00:02  20     those rare instances in which the motion and memorandum and

21     reply brief speaks for itself.

22          THE COURT:  Oh, really.  Okay.  I invited you here

23     today, so I thought you might have some interesting arguments

24     for me.

00:02  25          MR. CARGILLE:  Your Honor, there is quite a lot of

*United States District Court*
*Trenton, New Jersey*

1    interesting material here.

2         THE COURT:  All right.

3         MR. CARGILLE:  Especially considering that we -- our

4    position is that the Court should simply strike the opposition

00:03    5    as untimely, very untimely for no -- for no good cause.

6         THE COURT:  Could you just go through that untimely

7    argument for me?

8         MR. CARGILLE:  Sure.  It's very nicely laid out in

9    my August 21 letter to the Court.  So, the motion to dismiss

00:03    10    was filed on May 15, we served a copy by e-mail on May 20 to

11   Caitin Donnelly, and to Ms. Murtha on May 21; on May 29, the

12   Court docketed oral argument on August 19th.  On June 1, which

13   was the deadline for the opposition to be filed, I sent a

14   letter --

00:03    15         THE COURT:  Right, I got that letter on Friday.

16         MR. CARGILLE:  This letter was quite a while ago,

17   it's August 21.  So, there was a Friday letter, I think that

18   was an extension letter or a rescheduling letter.  Today's

19   letter addresses -- presents a few simple arguments regarding

00:04    20   the --

21         THE COURT:  Go ahead.

22         MR. CARGILLE:  It really will help to have a copy in

23   front of you.

24         THE COURT:  Which letter?

00:04    25         MR. CARGILLE:  The August 21 letter.

1          THE COURT:  I thought I had all my papers here, and

2     I don't have the August 21 letter.

3          MR. CARGILLE:  Would your Honor like to have someone

4     make a copy?  I have a rather informal copy here.

00:04     5          THE COURT:  Hold on; I'll get it, just give me one

6     second.

7               (Court leaves bench.)

8          THE COURT:  They're bringing that letter out.

9          MR. CARGILLE:  So it's really pretty fairly simple.

00:05    10     On June 1 I contacted them -- Ms. Murtha to -- in an effort

11     essentially to provide notice under Rule 11 that we believe

12     that certain facts were -- were not at all accurate.

13          On June 11, Ms. Donnelly, Caitlin Donnelly, filed a

14     notice of appearance in this action, so they were aware of the

00:05    15     action.  On August 11, the Court set oral argument for August

16     19.  And then six days later, plaintiff filed its opposition

17     on August 17.  So that opposition was just -- just a standard

18     memorandum.  There was a very short request at the -- on the

19     last page were the Court to accept the opposition, even though

00:06    20     it was untimely, because it purportedly was a docketing error.

21          And our position here is that we're now -- you know,

22     the opposition was due in June, we're now in -- well, it was

23     filed -- the opposition was filed in August, so almost two and

24     a half months late.  And they hadn't filed any extension, they

00:07    25     didn't request any extension from me, they didn't contact the

1   Court in a timely manner, and that of course violates the

2   Local Rule 7.1(d)(7).

3            So what they should have done was to either --

4   either obtain an extension by agreement, or file an extension

00:07   5   -- a motion for extension of time.

6            THE COURT:  Okay.

7            MR. CARGILLE:  I realize that this sort of summary

8   striking of an opposition is somewhat disfavored, and I

9   wouldn't be asking for it myself if the circumstances here

00:08   10   weren't quite so unusual.  I've been going back and forth with

11   Green Tree about their ownership of the note or lack thereof

12   for more than two and a half years.  They've told me six, now

13   seven times that they don't own the note, and then just on

14   August 17 they provide a copy of -- a stamped copy of a note

00:08   15   that appears to have been merely stamped and not actually

16   signed.

17            So, I mean there are a lot of circumstances.

18   They've made a number of misrepresentations, especially

19   significant to me, your Honor, is the one around May; it's in

00:08   20   the letter, very long letter.  Forward to May 15, it's at the

21   very end; it's on page 15.  And I apologize for the length of

22   the letter, your Honor, but because so long has been -- this

23   dispute has been at issue for so long, we've exchanged a lot

24   of correspondence about it.

00:09   25            So, on May 18, a representative of Green Tree

1    actually called me and told me that a foreclosure sale date

2    had been set for August 27.  And the representative's

3    intention was to convince me to submit another loan

4    modification application; by apparently telling me that a sale

00:09   5    date had been set.  It's -- it's incorrect.  The court -- no

6    court has set a foreclosure sale date for this matter.

7            On May 21, another representative confirmed that

8    Green Tree had a sale date scheduled in its computer, and she

9    also confirmed that the scheduled sale date was August 27.

00:10   10   And again, on May 21 that was confirmed.

11           So I -- there's a lot in here, but I truly believe

12   that Green Tree has acted unusually badly here in not

13   providing -- demonstrating to me that they owned the loan and

14   the note, or the note and the mortgage in the first place, and

00:10   15   then by these sorts of -- well, lies, your Honor.

16           I'd also like to point out that Green Tree,

17   surprisingly enough, one month -- about one month before

18   these -- these lies, entered into a settlement agreement, a

19   $63 million settlement agreement with I think the federal

00:11   20   government.  Because of, and precisely because of, their

21   history of unfair debt collection practices.

22           And one of the key terms in that settlement was that

23   they would not make anymore misrepresentations to any -- to

24   any of their debtors or any of the loans that they serviced.

00:11   25   And here a month later, they're -- they're lying to me about

1    the foreclosure date, in an effort to persuade me to file --

2    or to submit to them a new loan modification agreement.  It's

3    truly egregious.

4            And so, based -- based on that, based on the long

00:11    5    length of time here, I do believe that the Court should simply

6    strike the opposition as untimely, find that the plaintiff has

7    failed to provide any good cause for any extension of time,

8    and dismiss the case with prejudice.

9            THE COURT:  Okay, thank you.

00:12    10            Ms. Carlon?

11            MS. CARLON:  Yes, your Honor.

12            THE COURT:  So, I know you have your own motion to

13    remand; right?

14            MS. CARLON:  That's correct.

00:12    15            THE COURT:  And then you also wish to speak about

16    this motion to dismiss as well?  So, why don't you do the

17    motion to remand and then the motion to dismiss, and I'll give

18    Mr. Cargille an opportunity to discuss the remand motion.

19            MS. CARLON:  Okay, your Honor.  In this case the

00:12    20    defendant filed a notice of removal shortly after the

21    complaint was filed in the state court.  After some extensions

22    of time for the defendant to answer, our office -- after a

23    motion to dismiss was docketed, our office filed a motion to

24    remand the case back to state court.

00:12    25            THE COURT:  So, when was it removed, what was the

*United States District Court*
*Trenton, New Jersey*

1    date on that?

2              MS. CARLON:  The date of the removal is February 4th

3    of 2015.

4              MR. CARGILLE:  It was timely removed 35 days after

00:13    5    service of the state complaint, your Honor.

6              THE COURT:  Mr. Cargille, the rule is that this is

7    Ms. Carlon's opportunity to argue, so --

8              MR. CARGILLE:  I apologize.

9              THE COURT:  You'll have your chance to respond.  But

00:13    10   we need to handle the argument in a coherent manner, and the

11   best way to do that is to allow each party to have their time

12   to state their points, and then I give the other person time

13   to respond.

14             MR. CARGILLE:  Yes, your Honor.

00:13    15             THE COURT:  Go ahead, Ms. Carlon.

16             MS. CARLON:  The initial notice of removal cited

17   both diversity jurisdiction and also a federal question

18   jurisdiction.  To date there's not a federal question.

19   There's no underlying federal claim here.  This action brought

00:13    20   by the plaintiff is the only complaint that's in this action.

21             THE COURT:  So when the removal was made to this

22   Court on 2/4/15, when was the remand motion made?

23             MS. CARLON:  The remand motion was filed May 20th.

24             THE COURT:  Okay.

00:14    25             MS. CARLON:  But remand based on subject -- subject

1   matter jurisdiction is proper any time up until the entry of

2   final judgment.  Here, we've got a situation where we have a

3   defendant who requests removal to the federal court based on

4   both federal question and diversity.

00:14   5       Now, diversity is actually an improper basis for

6   removal here, because the defendant is a resident of New

7   Jersey, the subject property of this foreclosure action is

8   located in New Jersey, and the action was properly brought in

9   the New Jersey State Court foreclosure courts.

00:14   10       The federal question jurisdiction, we still don't have

11   a federal question, because there is no answer or

12   counterclaim.  Our action is not based on federal law, and

13   therefore in order for there to be a federal issue, a federal

14   question, there would need to be some sort of counterclaim or

00:15   15   defense.

16       THE COURT:  Well, in the removal did they cite to a

17   federal question?

18       MS. CARLON:  No, they just cited the statute.

19       THE COURT:  What statute?

00:15   20       MS. CARLON:  28 U.S.C. 1331.

21       THE COURT:  All right.

22       MS. CARLON:  But there is no -- there was no mention

23   of, for example, TILA, Truth in Lending actions, or real

24   estate settlement procedures acts violations, it was just this

00:15   25   is being removed based on these issues.

1          When the --

2          THE COURT:  Based on these issues, what do you mean

3     by these issues?

4          MS. CARLON:  Sorry.  Let me -- I'll read it to you

00:15     5     verbatim from the notice of removal:  Please take notice that

6     pursuant to 28 U.S.C. 1331, 1332 and 1146, the defendants did

7     on the 4th day of February file a notice of removal in the

8     District Court, to the District of the New Jersey of United

9     States of New Jersey.

00:16     10         THE COURT:  I'm sorry, go ahead.

11         MS. CARLON:  So, it simply cited to the statute in

12    the notice of removal.  It didn't specify what it was going to

13    be.  Typically when that happens we get an answer and a

14    counterclaim that has TILA, RESPA and other counterclaims in

00:16     15    the answer, but we don't have that here.  In fact, we just

16    have a 12(b)(6) motion.  So we still don't have subject matter

17    jurisdiction.

18         It was outside the 30 days of the initial objection

19    period to objecting to the removal, but the motion for remand

00:17     20    is still proper.  We don't have final judgment here.  And

21    because of that I don't think that the Court can rule on the

22    12(b)(6) motion, but that's of course my argument.

23         THE COURT:  Okay.

24         MS. CARLON:  As to the 12(b)(6) motion, of course I

00:17     25    would request that the Court consider the papers of the

1    plaintiff in opposition to the 12(b)(6) motion.  The -- most

2    notably, the papers in opposition to the 12(b)(6) motion

3    highlight the chain of ownership, it attaches the copy of the

4    note that's endorsed to blank, and it also goes through

00:17    5    basically the basic elements of a foreclosure.

6         But even if the Court decides not to consider the

7    plaintiff's papers in opposition, the 12(b)(6) motion itself

8    raises issues of fact that if this were converted to a summary

9    judgment motion, would preclude summary judgment from being

00:18    10    granted; and if it's considered as a 12(b)(6) motion, you

11    would just have to take the plaintiff -- the plaintiff's

12    foreclosure complaint at its four corners.  And what we have

13    there is that there's an assignment into Green Tree Servicing,

14    there's a default, and there is a mortgage that permits for

00:18    15    the lender to take action against the subject property.  So,

16    we have all of the elements of a foreclosure in the four

17    corners of the document.

18         Based on that, a motion under 12(b)(6) which seeks

19    to dismiss the complaint for failure to state a cause of

00:18    20    action, would properly be denied.  Because the cause of action

21    is clearly laid out with the traditional prima facie elements

22    of a New Jersey foreclosure.

23         THE COURT:  Okay, thank you.  Do you have any other

24    arguments?  Ms. Carlon, do you have any other arguments?

00:19    25         MS. CARLON:  No, your Honor, I think our papers

1   speak for themselves.

2           THE COURT:  Mr. Cargille, I'll give you an

3   opportunity to respond on the motion to remand.  Do you wish

4   to do that?

00:19   5           MR. CARGILLE:  Thank you, your Honor.  We do contend

6   that the motion for remand was untimely.

7           THE COURT:  Because it wasn't made in 30 days?

8           MR. CARGILLE:  Yes, your Honor.  And that's

9   considered generally a strict deadline.

00:19   10          THE COURT:  Well, I don't know, usually if there's

11  no subject matter jurisdiction, can usually remand even up

12  until final judgment.

13          MR. CARGILLE:  I certainly agree that if the Court

14  lacks subject jurisdiction then it shouldn't be here.  But we

00:19   15  believe that there is at a minimum diversity jurisdiction on

16  the current pleadings.  Regrettably, although 1331 does appear

17  on our notice to this Court, it -- the notice of removal filed

18  in the state court really was solely based on diversity

19  jurisdiction.

00:20   20          THE COURT:  Okay.  So you're here on diversity?

21          MR. CARGILLE:  Yes.  Now, the central argument --

22          THE COURT:  But the notice of removal, cites to

23  1332.

24          MR. CARGILLE:  It should be diversity jurisdiction.

00:20   25          THE COURT:  Well, that's what that is, 1332.

1          MR. CARGILLE:  The date --

2          THE COURT:  I don't see -- Ms. Carlon, you had

3    indicated it said 1331 as well?

4          MS. CARLON:  Yes, it says both 1331 and 1332.

00:21    5          THE COURT:  Can you tell me where it says that?

6          MS. CARLON:  Yes.  It says it -- it says it on the

7    notice of filing of removal to federal court:  Please take

8    notice that pursuant to 28 U.S.C. 1331, 1332, and 1146, the

9    defendants did on the 4th day file a notice -- 4th day of

00:21    10   February 2015 file a notice of removal.

11          It's even -- it's coded -- I mean this isn't really

12   binding on anyone, but it is coded as federal question on

13   Pacer as well.  So, there were -- there were two separate

14   possibilities for conferring subject matter jurisdiction on

00:22    15   this Court.  And I contend that there isn't a federal

16   question, and the diversity of citizenship is improper because

17   this is something that was brought in the state court where

18   the defendants are both citizens.  And that's -- that's 28

19   U.S.C. 1441(b)(2).

00:22    20         THE COURT:  What I had is Document 1, which is Joint

21   Notice of Removal, and in that joint notice I only see in

22   paragraph 7 and paragraph 8, 1332.

23          MS. CARLON:  I'm going to -- I suppose that I was

24   remiss in not reviewing that part of the docket, but this is

00:22    25   what was provided to us by the defendant upon --

1          THE COURT:  What document are you looking at?

2          MS. CARLON:  This is -- let me see -- I don't have a

3  number on it because it was sent directly to us before it was

4  docketed with the Court.

00:23    5          MR. CARGILLE:  If I may, your Honor?

6          THE COURT:  You may.

7          MR. CARGILLE:  Ms. Carlon is correct, on the notice

8  of removal to federal court, there are two documents that are

9  labeled notice -- one is labeled Notice of Removal to Federal

00:23   10  Court, the other is labeled Notice of Filing of Removal to

11  Federal Court.

12          THE COURT:  Oh, okay.

13          MR. CARGILLE:  And both I believe should be on the

14  record.  Now, the first one is a document that we filed in the

00:23   15  Superior Court advising the Superior Court that we were filing

16  for removal.  And then we attached to the Superior Court the

17  second one, the Notice of Filing of Removal to the Federal

18  Court.  And then finally there is the document entitled Joint

19  Notice of Removal, which sets forth the bases for the removal,

00:24   20  it sets out in very specific detail the bases for diversity

21  jurisdiction here.

22          I would like to point out that our -- our opening

23  sheet actually was checked off for diversity, not necessarily

24  federal question.  We do believe that if the case goes forward

00:24   25  in this Court we will file counterclaims that do provide

1    federal jurisdiction to the Court.

2              But if I may, your Honor, defendant -- plaintiffs

3    aren't arguing --

4              THE COURT:  I'm sorry, I was allowing to you answer

5    one question.

6              MR. CARGILLE:  I'm sorry.

7              THE COURT:  So I think I interrupted Ms. Carlon.

8              So, Ms. Carlon?

9              MS. CARLON:  Even if there were federal question,

10   which there isn't, there's still an issue with the diversity

11   jurisdiction here.  28 U.S.C. 1441(b)(2) says that an action

12   that's removable based on diversity is not removable if the

13   defendants are citizens of the state where the action is

14   brought.

15             THE COURT:  I understand that.

16             MS. CARLON:  They are residents of New Jersey, they

17   live at the subject property.  So we're still back at the

18   point where we don't have either.

19             THE COURT:  All right.  Thank you.

20             So, Mr. Cargille; I'm sorry.  You may proceed.

21             MR. CARGILLE:  Thank you, your Honor.

22             THE COURT:  So, do you understand that, that this

23   diversity issue, is -- you know, it's not an all encompassing

24   proposition, there's some instances where diversity isn't

25   sufficient.  So, one of them is where the defendants live in

*United States District Court*
*Trenton, New Jersey*

1   the state, you can't ordinarily remove to federal court under

2   those circumstances.  And the reason is that since you're

3   defending the case, you know, there was a fear by the founding

4   fathers that you could be subject to an adverse court ruling

5   if you're a defendant in a foreign jurisdiction, and if you're

6   not in a foreign jurisdiction then that fear is not present.

7   So, in those instances you can't remand -- or remove I should

8   say, based on diversity, which is where you are now.

9           MR. CARGILLE:  Your Honor, I do understand that had

10   the plaintiffs -- plaintiff filed a motion to remand timely

11   within 30 days, that the Court could properly grant that

12   motion on the basis -- under that section that opposing just

13   counsel just cited.

14           However, your Honor, there are numerous cases in

15   this -- I believe in this district and elsewhere, in fact, in

16   the Third Circuit, *Farina v. Nokia*, cited in our opposition,

17   which states essentially that if 30 days passes, the objection

18   under 1447(c) is then waived.  So, we removed on February 4,

19   they waited three months until May 20, and only then did they

20   file their motion for remand, which we believe because of

21   the -- the way that the courts in the Third Circuit have

22   construed this 1447 section, is -- gives this Court authority

23   to keep the case and not to remand it.

24           THE COURT:  But I think the difference is that where

25   we have federal subject matter jurisdiction, and at some point

1    in time during the case the federal subject matter may be

2    dismissed or it may not arise like in your case.  So, if there

3    is no federal subject matter on some different statute on

4    which you're basing it, then we would still remand the case if

00:28    5    only state causes of action remain.  So, I don't --

6            MR. CARGILLE:  Yes, your Honor.

7            THE COURT:  30 days has some input, but not in this

8    type of case for the most part.

9            MR. CARGILLE:  My understanding is that plaintiff

00:29    10    isn't challenging subject matter jurisdiction itself, but

11    primarily challenging the same state -- essentially the same

12    state rule -- I'm sorry, it's called the procedural forum

13    defendant issue.

14            THE COURT:  Your problem is that in your notice of

00:29    15    removal, at least in one of them, you had indicated that there

16    was some statute that was -- federal statute that has been

17    violated or breached, and therefore you have a right to be in

18    this court, in addition to your diversity.  But no answer has

19    been filed, so we don't know what the federal statute or cause

00:29    20    of action is, so now we are just left with the diversity one.

21            MR. CARGILLE:  We believe that there is subject

22    matter jurisdiction under diversity, your Honor.  The

23    plaintiffs are -- and there is a whole chain that I provided

24    in the notice of removal, setting out the states in which

00:30    25    plaintiff is a resident or citizen, and none of them are New

1   Jersey.  So it's not a question of --

2          THE COURT:  But you're not, you're a resident of the

3   State of New Jersey.

4          MR. CARGILLE:  Yes, your Honor.

5          THE COURT:  And you were before the state court in

6   New Jersey, under those circumstances, under the removal

7   statutes, you're not allowed to remove because there's no

8   reason to allow removal in that instance.

9          MR. CARGILLE:  I would have expected exactly the

10  same, your Honor; in fact, I was very surprised when I

11  discovered these Third Circuit cases finding a waiver, even

12  though there was -- the so-called forum defendant rule had

13  been violated.  But those cases also held that it wasn't a

14  question of jurisdiction, it was a question of a statutory

15  violation, which was not a jurisdictional issue and --

16         THE COURT:  I'm sorry; go ahead.

17         MR. CARGILLE:  And that it is a waivable issue, by

18  filing untimely, by failing to file within the 30 days.

19  Numerous courts have held this, your Honor.  I haven't seen

20  any case -- it's my recollection I haven't seen any case that

21  does waive the untimely filing.  The cases that I saw were on

22  the other side.  That's all, your Honor.

23         THE COURT:  All right.  So, I've reviewed this

24  matter, and the issue is we have this 30 day rule, and I

25  understand it, whoever has removed, must set forth the reasons

1    for the removal.  Within the removal, the first one I looked

2    at was the Joint Notice of Removal, Document 1, and it only

3    cites to diversity.  And if the plaintiff was just relying on

4    diversity, then they didn't file within the 30 days, so that

00:32    5    may have waived their right under certain circumstances.

6           But there was another document which Mr. Cargille

7    pointed out, that indicated that there was a 1331 issue, which

8    deals with the district court shall have original jurisdiction

9    over all civil actions arising under the Constitution, laws or

00:33    10    treaties of the United States.  So, if you assert that, then

11    the defendant has to come forward -- the matter is removed to

12    this Court, and it stays until such time as there is no

13    federal question pending.  And in this instance, the

14    defendants asserted in their notice of removal that there

00:33    15    would be a federal question, but it just never arose.  They

16    didn't file an answer, so they brought this motion to dismiss

17    the complaint.

18           So, the Court doesn't have any information before it

19    that would show that there's any federal question that's

00:34    20    pending.  And under those federal question issues, ordinarily

21    those types of issues can be raised with regard to

22    jurisdiction at any time, and I've had them at summary

23    judgment time, and we've remanded them back to state court

24    where the federal question was dismissed.

00:34    25           In this instance, on December 8, 2014, plaintiff

1   filed suit in Superior Court.  Evidently the Superior Court

2   rejected plaintiff's pleadings and issued a deficiency notice.

3   On January 5, 2015, defendants received the summons and

4   complaint.  February 2, 2015, defendants appeared pro se and

5   removed the matter.  Specifically -- and this refers to the

6   notice of removal; defendants contend they are domiciled in

7   New Jersey; the plaintiff is a citizen of Delaware, Maryland

8   and Minnesota, and the controversy is over $75,000, that's

9   part of their notice of removal.

10          So, the underlying action is a foreclosure action.

11  The defendants executed a promissory note with GMAC on August

12  28, 2003 for $285,000, with an initial interest rate of 5.2

13  percent I believe.  There was a mortgage that secured the

14  property.  Then the mortgage was assigned at some point to

15  Green Tree.  In this case, the defendants dispute the

16  assignment.  And plaintiff Green Tree asserts that the

17  defendants have defaulted on the mortgage payments.

18          So, pursuant to 28 U.S.C. 1441(a):  "Any civil

19  action brought in the state of which the district courts of

20  the United States have original jurisdiction, may be removed

21  by the defendant to the District Court of the United States.

22  That's 28 U.S.C. 1441(a).  See, *Metropolitan v. Taylor*, 481

23  U.S. 5863 (1987).  A defendant can remove an action to federal

24  court pursuant to 1441(a) if the plaintiff could have filed it

25  here in the first instance.  After removal a party can remand

1   the action back to the state court.  28 U.S.C. Section

2   1447(c).  However, pursuant to 28 U.S.C. 1441(b)(2), when the

3   defendant is a resident of the forum state, removal to federal

4   court on the basis of diversity jurisdiction is inappropriate.

00:37   5   The logic behind the authorization of federal diversity

6   jurisdiction is to protect defendants from favoritism of

7   plaintiff state courts, by allowing the foreign defendant to

8   remove the case to a federal district court.  That's *Trask v.*

9   *Kasenetz*, 818 F.Supp 39, 44 (E.D.N.Y. 1993).  This underlying

00:38   10   logic dictates that a case should be remanded to the state

11   where it originally brought, because "that court would have

12   greater familiarity with the interest of and the issues of the

13   case."  Here, it is undisputed that plaintiff brought the

14   action in Superior Court, the state in which the removing

00:38   15   defendants are domiciled.  Therefore, the defendants' removal

16   on the basis of diversity was improper under 28 U.S.C. Section

17   1441(b)(2).

18          Additionally, the Superior Court has greater

19   familiarity with the interest in the foreclosure action, given

00:39   20   the federal courts often follow substantive state law in

21   foreclosure proceedings.  Accordingly, because the defendants

22   are not subject to possible home state bias in this case, and

23   the foreclosure action is governed by state substantive law, I

24   don't find any basis to exercise the diversity jurisdiction.

00:39   25   And I know there's this issue with the 30 days clause, but

1   it's questionable whether the plaintiff -- whether they should

2   have awaited to see how you would answer, or whatever, to see

3   if there was a federal question in the case.  But when it

4   became apparent after you asserted federal question under your

00:39   5   notice and then not to assert it, that there was a legitimate

6   reason to present the issue to the Court.

7        And I understand it was two and a half months later,

8   but it's not a serious breach of the rules.  And it seems

9   understandable under the circumstances of how the removal took

00:40   10   place, and how the plaintiffs finally realized that there was

11   really no federal question at issue.  The notice of removal

12   said there was a federal question I believe at one point, but

13   no one has identified what the federal issue was, i.e.,

14   whether it violated a certain statute.  Since it's a

00:40   15   foreclosure, we usually see RESPA violations, Truth in Lending

16   violations, Federal Debt Collection Practices Act violations,

17   but none of them are asserted before the Court.  And as such,

18   I don't see any federal question upon which this Court can

19   sustain or maintain jurisdiction.

00:41   20        In addition, since the defendants are from the State

21   of New Jersey, there's no state court favoritism if the case

22   is handled in New Jersey.  So, the Court, based on the

23   application of the plaintiff, is remanding the case to state

24   court.

00:41   25        So, thank you for coming in and I will sign an

*United States District Court*
*Trenton, New Jersey*

1    order.

2            MS. CARLON:  Thank you.

3            MR. CARGILLE:  Your Honor, if I may, I understand

4    the ruling; I do believe that this is an appealable issue.  I

00:41    5    do believe that as pro se plaintiffs we have set forth in my

6    August 21 letter adequate grounds for the Court to find even

7    federal jurisdiction, even if the Court found that there were

8    not -- was not diversity jurisdiction.

9            We respectfully disagree with the Court's finding.

00:42   10   I do intend to appeal this issue to the second -- to the Third

11   Circuit because of those favorable cases, your Honor.  And

12   therefore, I would like to ask your Honor in addition to

13   providing the record as you have orally, to provide a written

14   opinion setting forth all of the bases for your Honor's ruling

00:42   15   so that we can have a good record on appeal.

16           THE COURT:  Well, you can just order the transcript

17   and you'll have it.

18           MR. CARGILLE:  Very good, your Honor.

19           THE COURT:  All right.  So, I'm looking through your

00:42   20   August 21st letter, and I don't see any --

21           MR. CARGILLE:  I do believe there are Truth in

22   Lending Act violations, that there are RESPA violations,

23   that -- that there are violations of orders that have been

24   entered in federal court, and I believe that defendant's --

00:43   25   plaintiff's conduct here is indeed sanctionable for violations

1    of those orders.

2           THE COURT:  I'm just looking through this letter, I

3    had read it before, but it didn't strike me that I saw or

4    observed any federal issues.  It looked like this was a

5    foreclosure case.  And you may have issues with regard to

6    whether Green Tree is the assignee of GMAC, or other issues

7    like that, but those are all issues that can be easily handled

8    by the Superior Court of New Jersey.  So, I didn't see any

9    federal issues raised there.

10          MR. CARGILLE:  May I respond on that issue, your

11   Honor?  I don't disagree that the state courts could handle

12   most of these issues, but I do believe that the federal court

13   has a somewhat unique capability and ability to -- to work

14   through all of these very specific and I think complicated

15   issues.  So, I removed it to this Court primarily because I do

16   believe that it's complicated enough for this Court to

17   address.

18          THE COURT:  I understand that.  So, we just disagree

19   on that point.

20          All right.  So thank you for coming in.  An order

21   will issue.  If you need the rationale behind my decision, you

22   can just order the transcript from Frank and it will be

23   provided to you.  So, thank you.

24          (Matter concluded.)

25

**$**

$285,000 [1] - 20:12
$63 [1] - 6:19
$75,000 [1] - 20:8

**/**

/S [1] - 1:24

**0**

08608 [1] - 1:10

**1**

1 [4] - 3:12, 4:10, 13:20, 19:2
11 [3] - 4:11, 4:13, 4:15
1146 [2] - 10:6, 13:8
12(b)(6 [8] - 10:16, 10:22, 10:24, 11:1, 11:2, 11:7, 11:10, 11:18
13 [1] - 1:8
1331 [7] - 9:20, 10:6, 12:16, 13:3, 13:4, 13:8, 19:7
1332 [6] - 10:6, 12:23, 12:25, 13:4, 13:8, 13:22
1441(a [2] - 20:18, 20:24
1441(a) [1] - 20:22
1441(b)(2 [2] - 15:11, 21:2
1441(b)(2) [2] - 13:19, 21:17
1447 [1] - 16:22
1447(c [1] - 16:18
1447(c) [1] - 21:2
15 [3] - 3:10, 5:20, 5:21
15-938 [1] - 1:5
17 [2] - 4:17, 5:14
18 [1] - 5:25
19 [1] - 4:16
1987 [1] - 20:23
1993 [1] - 21:9
19th [1] - 3:12

**2**

2 [1] - 20:4
2/4/15 [1] - 8:22

20 [2] - 3:10, 16:19
2003 [1] - 20:12
2014 [1] - 19:25
2015 [5] - 1:8, 8:3, 13:10, 20:3, 20:4
20th [1] - 8:23
21 [8] - 3:9, 3:11, 3:17, 3:25, 4:2, 6:7, 6:10, 23:6
21st [1] - 23:20
27 [2] - 6:2, 6:9
28 [12] - 1:23, 9:20, 10:6, 13:8, 13:18, 15:11, 20:12, 20:18, 20:22, 21:1, 21:2, 21:16
29 [1] - 3:11

**3**

30 [9] - 10:18, 12:7, 16:11, 16:17, 17:7, 18:18, 18:24, 19:4, 21:25
35 [1] - 8:4
39 [1] - 21:9

**4**

4 [1] - 16:18
402 [1] - 1:9
44 [1] - 21:9
481 [1] - 20:22
4th [4] - 8:2, 10:7, 13:9

**5**

5 [1] - 20:3
5.2 [1] - 20:12
5863 [1] - 20:23

**7**

7 [1] - 13:22
7.1(d)(7) [1] - 5:2
753 [1] - 1:23

**8**

8 [2] - 13:22, 19:25
818 [1] - 21:9
856 [1] - 1:25
889-4761 [1] - 1:25

**A**

ability [1] - 24:13
accept [1] - 4:19
Accordingly [1] - 21:21
accurate [1] - 4:12
Act [2] - 22:16, 23:22
acted [1] - 6:12
action [22] - 4:14, 4:15, 8:19, 8:20, 9:7, 9:8, 9:12, 11:15, 11:20, 15:11, 15:13, 17:5, 17:20, 20:10, 20:19, 20:23, 21:1, 21:14, 21:19, 21:23
actions [2] - 9:23, 19:9
acts [1] - 9:24
addition [3] - 17:18, 22:20, 23:12
Additionally [1] - 21:18
address [1] - 24:17
addresses [1] - 3:19
adequate [1] - 23:6
admitted [2] - 2:13
adverse [1] - 16:4
advising [1] - 14:15
afternoon [3] - 2:4, 2:6, 2:11
ago [1] - 3:16
agree [1] - 12:13
agreement [4] - 5:4, 6:18, 6:19, 7:2
ahead [4] - 3:21, 8:15, 10:10, 18:16
allow [2] - 8:11, 18:8
allowed [1] - 18:7
allowing [2] - 15:4, 21:7
almost [1] - 4:23
answer [8] - 7:22, 9:11, 10:13, 10:15, 15:4, 17:18, 19:16, 22:2
apologize [2] - 5:21, 8:8
apparent [1] - 22:4
appeal [2] - 23:10, 23:15
appealable [1] - 23:4
appear [1] - 12:16
appearance [1] - 4:14
appearances [1] - 2:3
appeared [1] - 20:4
appearing [1] - 2:8
application [2] - 6:4, 22:23

argue [1] - 8:7
arguing [1] - 15:3
argument [6] - 3:7, 3:12, 4:15, 8:10, 10:22, 12:21
arguments [4] - 2:23, 3:19, 11:24
arise [1] - 17:2
arising [1] - 19:9
arose [1] - 19:15
assert [2] - 19:10, 22:5
asserted [3] - 19:14, 22:4, 22:17
asserts [1] - 20:16
assigned [1] - 20:14
assignee [1] - 24:6
assignment [2] - 11:13, 20:16
attached [1] - 14:16
attaches [1] - 11:3
attorney [1] - 2:13
August [15] - 3:9, 3:12, 3:17, 3:25, 4:2, 4:15, 4:17, 4:23, 5:14, 6:2, 6:9, 20:11, 23:6, 23:20
authority [1] - 16:22
authorization [1] - 21:5
awaited [1] - 22:2
aware [1] - 4:14

**B**

badly [1] - 6:12
Based [2] - 10:2, 11:18
based [11] - 7:4, 8:25, 9:3, 9:12, 9:25, 12:18, 15:12, 16:8, 22:22
bases [3] - 14:19, 14:20, 23:14
basic [1] - 11:5
basing [1] - 17:4
basis [5] - 9:5, 16:12, 21:4, 21:16, 21:24
became [1] - 22:4
behind [2] - 21:5, 24:21
bench [1] - 4:7
best [1] - 8:11
bias [1] - 21:22
binding [1] - 13:12
blank [1] - 11:4
breach [1] - 22:8
breached [1] - 17:17
brief [1] - 2:21
bringing [1] - 4:8

brought [8] - 8:19, 9:8, 13:17, 15:14, 19:16, 20:19, 21:11, 21:13
BY [1] - 1:16

**C**

C.S.R. [1] - 1:24
Caitin [1] - 3:11
Caitlin [1] - 4:13
capability [1] - 24:13
CARGILLE [41] - 1:6, 1:18, 2:8, 2:10, 2:12, 2:16, 2:19, 2:25, 3:3, 3:8, 3:16, 3:22, 3:25, 4:3, 4:9, 5:7, 8:4, 8:8, 8:14, 12:5, 12:8, 12:13, 12:21, 12:24, 13:1, 14:5, 14:7, 14:13, 15:6, 15:21, 16:9, 17:6, 17:9, 17:21, 18:4, 18:9, 18:17, 23:3, 23:18, 23:21, 24:10
Cargille [9] - 2:2, 2:9, 2:10, 2:18, 7:18, 8:6, 12:2, 15:20, 19:6
CARLON [23] - 1:16, 2:4, 7:11, 7:14, 7:19, 8:2, 8:16, 8:23, 8:25, 9:18, 9:20, 9:22, 10:4, 10:11, 10:24, 11:25, 13:4, 13:6, 13:23, 14:2, 15:9, 15:16, 23:2
Carlon [9] - 2:5, 2:6, 7:10, 8:15, 11:24, 13:2, 14:7, 15:7, 15:8
Carlon's [1] - 8:7
case [21] - 7:8, 7:19, 7:24, 14:24, 16:3, 16:23, 17:1, 17:2, 17:4, 17:8, 18:20, 20:15, 21:8, 21:10, 21:13, 21:22, 22:3, 22:21, 22:23, 24:5
cases [5] - 16:14, 18:11, 18:13, 18:21, 23:11
causes [1] - 17:5
central [1] - 12:21
certain [3] - 4:12, 19:5, 22:14
certainly [1] - 12:13
Certified [1] - 1:23
chain [2] - 11:3, 17:23
challenging [2] -

17:10, 17:11
**chance** [1] - 8:9
**checked** [1] - 14:23
**Circuit** [4] - 16:16, 16:21, 18:11, 23:11
**circumstances** [6] - 5:9, 5:17, 16:2, 18:6, 19:5, 22:9
**cite** [1] - 9:16
**cited** [5] - 8:16, 9:18, 10:11, 16:13, 16:16
**cites** [2] - 12:22, 19:3
**citizen** [2] - 17:25, 20:7
**citizens** [2] - 13:18, 15:13
**citizenship** [1] - 13:16
**civil** [2] - 19:9, 20:18
**CIVIL** [1] - 1:5
**claim** [1] - 8:19
**CLARKSON** [1] - 1:9
**clause** [1] - 21:25
**clearly** [1] - 11:21
**coded** [2] - 13:11, 13:12
**coherent** [1] - 8:10
**Collection** [1] - 22:16
**collection** [1] - 6:21
**coming** [2] - 22:25, 24:20
**complaint** [7] - 7:21, 8:5, 8:20, 11:12, 11:19, 19:17, 20:4
**complicated** [2] - 24:14, 24:16
**computer** [1] - 6:8
**concluded** [1] - 24:24
**conduct** [1] - 23:25
**conferring** [1] - 13:14
**confirmed** [3] - 6:7, 6:9, 6:10
**consider** [2] - 10:25, 11:6
**considered** [2] - 11:10, 12:9
**considering** [1] - 3:3
**Constitution** [1] - 19:9
**construed** [1] - 16:22
**contact** [1] - 4:25
**contacted** [1] - 4:10
**contend** [3] - 12:5, 13:15, 20:6
**controversy** [1] - 20:8
**converted** [1] - 11:8
**convince** [1] - 6:3
**copy** [7] - 3:10, 3:22, 4:4, 5:14, 11:3
**corners** [2] - 11:12, 11:17

**correct** [3] - 1:23, 7:14, 14:7
**correspondence** [1] - 5:24
**counsel** [1] - 16:13
**counterclaim** [3] - 9:12, 9:14, 10:14
**counterclaims** [2] - 10:14, 14:25
**course** [3] - 5:1, 10:22, 10:24
**COURT** [61] - 1:1, 1:13, 2:1, 2:6, 2:11, 2:15, 2:17, 2:22, 3:2, 3:6, 3:15, 3:21, 3:24, 4:1, 4:5, 4:8, 5:6, 7:9, 7:12, 7:15, 7:25, 8:6, 8:9, 8:15, 8:21, 8:24, 9:16, 9:19, 9:21, 10:2, 10:10, 10:23, 11:23, 12:2, 12:7, 12:10, 12:20, 12:22, 12:25, 13:2, 13:5, 13:20, 14:1, 14:6, 14:12, 15:4, 15:7, 15:15, 15:19, 15:22, 16:24, 17:7, 17:14, 18:2, 18:5, 18:16, 18:23, 23:16, 23:19, 24:2, 24:18
**Court** [24] - 6:5, 6:6, 7:21, 7:24, 9:3, 12:18, 13:7, 13:17, 14:8, 16:1, 16:4, 17:18, 18:5, 19:8, 19:23, 20:24, 21:1, 21:4, 21:8, 21:11, 22:21, 22:24, 23:24, 24:12
**Court's** [1] - 23:9
**COURTHOUSE** [1] - 1:9
**courts** [7] - 9:9, 16:21, 18:19, 20:19, 21:7, 21:20, 24:11
**current** [1] - 12:16

**D**

**date** [10] - 6:1, 6:5, 6:6, 6:8, 6:9, 7:1, 8:1, 8:2, 8:18, 13:1
**DAVID** [2] - 1:6, 1:18
**David** [1] - 2:9
**days** [10] - 4:16, 8:4, 10:18, 12:7, 16:11, 16:17, 17:7, 18:18, 19:4, 21:25
**deadline** [2] - 3:13, 12:9
**deals** [1] - 19:8
**debt** [1] - 6:21
**Debt** [2] - 22:16
**debtors** [1] - 6:24
**December** [1] - 19:25
**decides** [1] - 11:6
**decision** [2] - 24:21
**default** [1] - 11:14
**defaulted** [1] - 20:17
**defendant** [14] - 7:20, 7:22, 9:3, 9:6, 13:25, 15:2, 16:5, 17:13, 18:12, 19:11, 20:21, 20:23, 21:3, 21:7
**defendant's** [1] - 23:24
**defendants** [17] - 2:7, 10:6, 13:9, 13:18, 15:13, 15:25, 19:14, 20:3, 20:4, 20:6, 20:11, 20:15, 20:17, 21:6, 21:15, 21:21, 22:20
**DEFENDANTS** [1] - 1:6
**defendants'** [1] - 21:15
**defending** [1] - 16:3
**defense** [1] - 9:15
**deficiency** [1] - 20:2
**Delaware** [1] - 20:7
**demonstrating** [1] - 6:13
**denied** [1] - 11:20
**DENISE** [1] - 1:16
**Denise** [1] - 2:4
**detail** [1] - 14:20
**dictates** [1] - 21:10
**difference** [1] - 16:24
**different** [1] - 17:3
**directly** [1] - 14:3
**disagree** [3] - 23:9, 24:11, 24:18
**discovered** [1] - 18:11
**discuss** [1] - 7:18
**disfavored** [1] - 5:8

**dismiss** [8] - 2:17, 3:9, 7:8, 7:16, 7:17, 7:23, 11:19, 19:16
**DISMISS/MOTION** [1] - 1:21
**dismissed** [2] - 17:2, 19:24
**dispute** [2] - 5:23, 20:15
**District** [3] - 10:8, 20:21
**DISTRICT** [4] - 1:1, 1:1, 1:13, 1:13
**district** [4] - 16:15, 19:8, 20:19, 21:8
**diversity** [25] - 8:17, 9:4, 9:5, 12:15, 12:18, 12:20, 12:24, 13:16, 14:20, 14:23, 15:10, 15:12, 15:23, 15:24, 16:8, 17:18, 17:20, 17:22, 19:3, 19:4, 21:4, 21:5, 21:16, 21:24, 23:8
**docket** [1] - 13:24
**docketed** [3] - 3:12, 7:23, 14:4
**docketing** [1] - 4:20
**document** [5] - 11:17, 14:1, 14:14, 14:18, 19:6
**Document** [2] - 13:20, 19:2
**documents** [1] - 14:8
**domiciled** [2] - 20:6, 21:15
**done** [1] - 5:3
**Donnelly** [3] - 3:11, 4:13
**due** [1] - 4:22
**during** [1] - 17:1

**E**

**e-mail** [1] - 3:10
**E.D.N.Y** [1] - 21:9
**easily** [1] - 24:7
**EAST** [1] - 1:9
**effort** [2] - 4:10, 7:1
**egregious** [1] - 7:3
**either** [3] - 5:3, 5:4, 15:18
**elements** [3] - 11:5, 11:16, 11:21
**elsewhere** [1] - 16:15
**encompassing** [1] - 15:23
**end** [1] - 5:21
**endorsed** [1] - 11:4

**enter** [1] - 2:2
**entered** [2] - 6:18, 23:24
**entitled** [1] - 14:18
**entry** [1] - 9:1
**error** [1] - 4:20
**Especially** [1] - 3:3
**especially** [1] - 5:18
**ESQUIRE** [2] - 1:16, 1:18
**essentially** [2] - 4:11, 16:17, 17:11
**estate** [1] - 9:24
**Evidently** [1] - 20:1
**exactly** [1] - 18:9
**example** [1] - 9:23
**exchanged** [1] - 5:23
**executed** [1] - 20:11
**exercise** [1] - 21:24
**expected** [1] - 18:9
**extension** [7] - 3:18, 4:24, 4:25, 5:4, 5:5, 7:7
**extensions** [1] - 7:21

**F**

**F.Supp** [1] - 21:9
**facie** [1] - 11:21
**fact** [4] - 10:15, 11:8, 16:15, 18:10
**facts** [1] - 4:12
**failed** [1] - 7:7
**failing** [1] - 18:18
**failure** [1] - 11:19
**fairly** [1] - 4:9
**familiarity** [2] - 21:12, 21:19
**Farina** [1] - 16:16
**fathers** [1] - 16:4
**favorable** [1] - 23:11
**favoritism** [2] - 21:6, 22:21
**fear** [2] - 16:3, 16:6
**February** [5] - 8:2, 10:7, 13:10, 16:18, 20:4
**Federal** [4] - 14:9, 14:11, 14:17, 22:16
**federal** [46] - 6:19, 8:17, 8:18, 8:19, 9:3, 9:4, 9:10, 9:11, 9:12, 9:13, 9:17, 13:7, 13:12, 13:15, 14:8, 14:24, 15:1, 15:9, 16:1, 16:25, 17:1, 17:3, 17:16, 17:19, 19:13, 19:15, 19:19, 19:20, 19:24, 20:23,

21:3, 21:5, 21:8,
21:20, 22:3, 22:4,
22:11, 22:12, 22:13,
22:18, 23:7, 23:24,
24:4, 24:9, 24:12
**few** [1] - 3:19
**file** [10] - 5:4, 7:1,
10:7, 13:9, 13:10,
14:25, 16:20, 18:18,
19:4, 19:16
**filed** [17] - 3:10, 3:13,
4:13, 4:16, 4:23,
4:24, 7:20, 7:21,
7:23, 8:23, 12:17,
14:14, 16:10, 17:19,
20:1, 20:24
**filing** [4] - 13:7, 14:15,
18:18, 18:21
**Filing** [2] - 14:10,
14:17
**final** [3] - 9:2, 10:20,
12:12
**finally** [2] - 14:18,
22:10
**first** [5] - 2:2, 6:14,
14:14, 19:1, 20:25
**FISHER** [1] - 1:9
**follow** [1] - 21:20
**FOR** [1] - 1:17
**foreclosure** [15] - 6:1,
6:6, 7:1, 9:7, 9:9,
11:5, 11:12, 11:16,
11:22, 20:10, 21:19,
21:21, 21:23, 22:15,
24:5
**foreign** [3] - 16:5,
16:6, 21:7
**forth** [5] - 5:10, 14:19,
18:25, 23:5, 23:14
**forum** [3] - 17:12,
18:12, 21:3
**forward** [2] - 14:24,
19:11
**Forward** [1] - 5:20
**founding** [1] - 16:3
**four** [2] - 11:12, 11:16
**Francis** [1] - 1:24
**FRANCIS** [1] - 1:24
**Frank** [1] - 24:22
**Friday** [2] - 3:15, 3:17
**front** [1] - 3:23

## G

**Gable** [1] - 1:24
**GABLE** [1] - 1:24
**generally** [1] - 12:9
**given** [1] - 21:19
**GMAC** [2] - 20:11,

24:6
**governed** [1] - 21:23
**government** [1] - 6:20
**grant** [1] - 16:11
**granted** [1] - 11:10
**greater** [2] - 21:12,
21:18
**Green** [15] - 2:1, 2:5,
5:11, 5:25, 6:8, 6:12,
6:16, 11:13, 20:15,
20:16, 24:6
**GREEN** [1] - 1:3
**grounds** [1] - 23:6
**Group** [1] - 2:5
**GROUP** [1] - 1:16

## H

**half** [3] - 4:24, 5:12,
22:7
**handle** [2] - 8:10,
24:11
**handled** [2] - 22:22,
24:7
**heard** [1] - 2:18
**HEARING** [1] - 1:21
**held** [2] - 18:13, 18:19
**help** [1] - 3:22
**highlight** [1] - 11:3
**history** [1] - 6:21
**Hold** [1] - 4:5
**home** [1] - 21:22
**Honor** [32] - 2:4, 2:8,
2:16, 2:19, 2:25, 4:3,
5:19, 5:22, 6:15,
7:11, 7:19, 8:5, 8:14,
11:25, 12:5, 12:8,
14:5, 15:2, 15:21,
16:9, 16:14, 17:6,
17:22, 18:4, 18:10,
18:19, 18:22, 23:3,
23:11, 23:12, 23:18,
24:11
**Honor's** [1] - 23:14
**HONORABLE** [1] -
1:12

## I

**i.e** [1] - 22:13
**identified** [1] - 22:13
**improper** [3] - 9:5,
13:16, 21:16
**inappropriate** [1] -
21:4
**incorrect** [1] - 6:5
**indeed** [1] - 23:25
**indicated** [3] - 13:3,

17:15, 19:7
**informal** [1] - 4:4
**information** [1] -
19:18
**initial** [3] - 8:16, 10:18,
20:12
**input** [1] - 17:7
**instance** [4] - 18:8,
19:13, 19:25, 20:25
**instances** [3] - 2:20,
15:24, 16:7
**intend** [1] - 23:10
**intention** [1] - 6:3
**interest** [3] - 20:12,
21:12, 21:19
**interesting** [2] - 2:23,
3:1
**interrupted** [1] - 15:7
**invited** [1] - 2:22
**issue** [17] - 5:23, 9:13,
15:10, 15:23, 17:13,
18:15, 18:17, 18:24,
19:7, 21:25, 22:6,
22:11, 22:13, 23:4,
23:10, 24:10, 24:21
**issued** [1] - 20:2
**issues** [14] - 9:25,
10:2, 10:3, 11:8,
19:20, 19:21, 21:12,
24:4, 24:5, 24:6,
24:7, 24:9, 24:12,
24:15
**itself** [3] - 2:21, 11:7,
17:10

## J

**January** [1] - 20:3
**Jersey** [15] - 2:14, 9:7,
9:8, 9:9, 10:8, 10:9,
11:22, 15:16, 18:1,
18:3, 18:6, 20:7,
22:21, 22:22, 24:8
**JERSEY** [3] - 1:1,
1:10, 1:13
**Joint** [3] - 13:20,
14:18, 19:2
**joint** [1] - 13:21
**JUDGE** [1] - 1:13
**judgment** [6] - 9:2,
10:20, 11:9, 12:12,
19:23
**JULIE** [1] - 1:6
**Julie** [1] - 2:10
**June** [4] - 3:12, 4:10,
4:13, 4:22
**jurisdiction** [29] -
8:17, 8:18, 9:1, 9:10,
10:17, 12:11, 12:14,

12:15, 12:19, 12:24,
13:14, 14:21, 15:1,
15:11, 16:5, 16:6,
16:25, 17:10, 17:22,
18:14, 19:8, 19:22,
20:20, 21:4, 21:6,
21:24, 22:19, 23:7,
23:8
**jurisdictional** [1] -
18:15

## K

**Kasenetz** [1] - 21:9
**keep** [1] - 16:23
**key** [1] - 6:22
**KML** [2] - 1:16, 2:5

## L

**labeled** [3] - 14:9,
14:10
**lack** [1] - 5:11
**lacks** [1] - 12:14
**laid** [2] - 3:8, 11:21
**last** [1] - 4:19
**late** [1] - 4:24
**Law** [1] - 2:5
**law** [3] - 9:12, 21:20,
21:23
**LAW** [1] - 1:16
**laws** [1] - 19:9
**least** [1] - 17:15
**leaves** [1] - 4:7
**left** [1] - 17:20
**legitimate** [1] - 22:5
**lender** [1] - 11:15
**Lending** [3] - 9:23,
22:15, 23:22
**length** [2] - 5:21, 7:5
**letter** [18] - 3:9, 3:14,
3:15, 3:16, 3:17,
3:18, 3:19, 3:24,
3:25, 4:2, 4:8, 5:20,
5:22, 23:6, 23:20,
24:2
**lies** [2] - 6:15, 6:18
**live** [2] - 15:17, 15:25
**LLC** [1] - 1:3
**loan** [3] - 6:3, 6:13, 7:2
**loans** [1] - 6:24
**Local** [1] - 5:2
**located** [1] - 9:8
**logic** [2] - 21:5, 21:10
**looked** [2] - 19:1, 24:4
**looking** [3] - 14:1,
23:19, 24:2
**lying** [1] - 6:25

## M

**mail** [1] - 3:10
**maintain** [1] - 22:19
**manner** [2] - 5:1, 8:10
**Maryland** [1] - 20:7
**material** [1] - 3:1
**matter** [13] - 6:6, 9:1,
10:16, 12:11, 13:14,
16:25, 17:1, 17:3,
17:10, 17:22, 18:24,
19:11, 20:5
**Matter** [1] - 24:24
**mean** [3] - 5:17, 10:2,
13:11
**memorandum** [2] -
2:20, 4:18
**mention** [1] - 9:22
**merely** [1] - 5:15
**Metropolitan** [1] -
20:22
**might** [1] - 2:23
**million** [1] - 6:19
**minimum** [1] - 12:15
**Minnesota** [1] - 20:8
**misrepresentations**
[2] - 5:18, 6:23
**modification** [2] - 6:4,
7:2
**month** [3] - 6:17, 6:25
**months** [3] - 4:24,
16:19, 22:7
**mortgage** [5] - 6:14,
11:14, 20:13, 20:14,
20:17
**most** [3] - 11:1, 17:8,
24:12
**motion** [29] - 2:17,
2:20, 3:9, 5:5, 7:12,
7:16, 7:17, 7:18,
7:23, 8:22, 8:23,
10:16, 10:19, 10:22,
10:24, 11:1, 11:2,
11:7, 11:9, 11:10,
11:18, 12:3, 12:6,
16:10, 16:12, 16:20,
19:16
**MOTION** [1] - 1:21
**MR** [38] - 2:8, 2:12,
2:16, 2:19, 2:25, 3:3,
3:8, 3:16, 3:22, 3:25,
4:3, 4:9, 5:7, 8:4,
8:8, 8:14, 12:5, 12:8,
12:13, 12:21, 12:24,
13:1, 14:5, 14:7,
14:13, 15:6, 15:21,
16:9, 17:6, 17:9,
17:21, 18:4, 18:9,
18:17, 23:3, 23:18,

23:21, 24:10
**MS** [23] - 2:4, 2:10, 7:11, 7:14, 7:19, 8:2, 8:16, 8:23, 8:25, 9:18, 9:20, 9:22, 10:4, 10:11, 10:24, 11:25, 13:4, 13:6, 13:23, 14:2, 15:9, 15:16, 23:2
**Murtha** [2] - 3:11, 4:10
**must** [1] - 18:25

## N

**necessarily** [1] - 14:23
**need** [3] - 8:10, 9:14, 24:21
**never** [1] - 19:15
**New** [16] - 2:13, 9:6, 9:8, 9:9, 10:8, 10:9, 11:22, 15:16, 17:25, 18:3, 18:6, 20:7, 22:21, 22:22, 24:8
**new** [1] - 7:2
**NEW** [3] - 1:1, 1:10, 1:13
**nicely** [1] - 3:8
**NO** [1] - 1:5
**Nokia** [1] - 16:16
**none** [2] - 17:25, 22:17
**notably** [1] - 11:2
**note** [7] - 5:11, 5:13, 5:14, 6:14, 11:4, 20:11
**Notice** [6] - 13:21, 14:9, 14:10, 14:17, 14:19, 19:2
**notice** [26] - 4:11, 4:14, 7:20, 8:16, 10:5, 10:7, 10:12, 12:17, 12:22, 13:7, 13:8, 13:9, 13:10, 13:21, 14:7, 14:9, 17:14, 17:24, 19:14, 20:2, 20:6, 20:9, 22:5, 22:11
**number** [2] - 5:18, 14:3
**Numerous** [1] - 18:19
**numerous** [1] - 16:14

## O

**objecting** [1] - 10:19
**objection** [2] - 10:18, 16:17
**observed** [1] - 24:4
**obtain** [1] - 5:4

**OCTOBER** [1] - 1:8
**OF** [2] - 1:1, 1:13
**office** [1] - 7:22, 7:23
**OFFICIAL** [1] - 1:25
**often** [1] - 21:20
**ON** [1] - 1:21
**one** [16] - 2:19, 4:5, 5:19, 6:17, 6:22, 14:9, 14:14, 14:17, 15:5, 15:25, 17:15, 17:20, 19:1, 22:12, 22:13
**opening** [1] - 14:22
**opinion** [1] - 23:14
**opportunity** [3] - 7:18, 8:7, 12:3
**opposing** [1] - 16:12
**opposition** [13] - 3:4, 3:13, 4:16, 4:17, 4:19, 4:22, 4:23, 5:8, 7:6, 11:1, 11:2, 11:7, 16:16
**oral** [2] - 3:12, 4:15
**orally** [1] - 23:13
**order** [5] - 9:13, 23:1, 23:16, 24:20, 24:22
**orders** [2] - 23:23, 24:1
**ordinarily** [2] - 16:1, 19:20
**original** [2] - 19:8, 20:20
**originally** [1] - 21:11
**outside** [1] - 10:18
**own** [2] - 5:13, 7:12
**owned** [1] - 6:13
**ownership** [2] - 5:11, 11:3

## P

**Pacer** [1] - 13:13
**page** [2] - 4:19, 5:21
**papers** [5] - 4:1, 10:25, 11:2, 11:7, 11:25
**paragraph** [2] - 13:22
**part** [3] - 13:24, 17:8, 20:9
**party** [2] - 8:11, 20:25
**passes** [1] - 16:17
**payments** [1] - 20:17
**PC** [1] - 1:16
**pending** [2] - 19:13, 19:20
**percent** [1] - 20:13
**period** [1] - 10:19
**permits** [1] - 11:14
**person** [1] - 8:12

**persuade** [1] - 7:1
**PETER** [1] - 1:12
**PGS** [1] - 1:5
**place** [2] - 6:14, 22:10
**plaintiff** [19] - 2:3, 2:5, 4:16, 7:6, 8:20, 11:1, 11:11, 16:10, 17:9, 17:25, 19:3, 19:25, 20:7, 20:16, 20:24, 21:7, 21:13, 22:1, 22:23
**PLAINTIFF** [2] - 1:4, 1:17
**plaintiff's** [4] - 11:7, 11:11, 20:2, 23:25
**plaintiffs** [5] - 15:2, 16:10, 17:23, 22:10, 23:5
**pleadings** [2] - 12:16, 20:2
**point** [7] - 6:16, 14:22, 15:18, 16:25, 20:14, 22:12, 24:19
**pointed** [1] - 19:7
**points** [1] - 8:12
**position** [2] - 3:4, 4:21
**possibilities** [1] - 13:14
**possible** [1] - 21:22
**Practices** [1] - 22:16
**practices** [1] - 6:21
**precisely** [1] - 6:20
**preclude** [1] - 11:9
**prejudice** [1] - 7:8
**present** [2] - 16:6, 22:6
**presents** [1] - 3:19
**pretty** [1] - 4:9
**prima** [1] - 11:21
**primarily** [2] - 17:11, 24:15
**pro** [3] - 2:8, 20:4, 23:5
**PRO** [1] - 1:18
**problem** [1] - 17:14
**procedural** [1] - 17:12
**procedures** [1] - 9:24
**proceed** [1] - 15:20
**proceedings** [1] - 21:21
**promissory** [1] - 20:11
**proper** [2] - 9:1, 10:20
**properly** [3] - 9:8, 11:20, 16:11
**property** [4] - 9:7, 11:15, 15:17, 20:14
**proposition** [1] - 15:24
**protect** [1] - 21:6
**provide** [5] - 4:11,

5:14, 7:7, 14:25, 23:13
**provided** [3] - 13:25, 17:23, 24:23
**providing** [2] - 6:13, 23:13
**purportedly** [1] - 4:20
**pursuant** [5] - 10:6, 13:8, 20:18, 20:24, 21:2

## Q

**questionable** [1] - 22:1
**quite** [3] - 2:25, 3:16, 5:10

## R

**R.M.R** [1] - 1:24
**raised** [2] - 19:21, 24:9
**raises** [1] - 11:8
**rare** [1] - 2:20
**rate** [1] - 20:12
**rather** [1] - 4:4
**rationale** [1] - 24:21
**read** [2] - 10:4, 24:3
**real** [1] - 9:23
**realize** [1] - 5:7
**realized** [1] - 22:10
**really** [6] - 2:22, 3:22, 4:9, 12:18, 13:11, 22:11
**reason** [3] - 16:2, 18:8, 22:6
**reasons** [1] - 18:25
**received** [1] - 20:3
**recollection** [1] - 18:20
**record** [3] - 14:14, 23:13, 23:15
**refers** [1] - 20:5
**regard** [2] - 19:21, 24:5
**regarding** [1] - 3:19
**Regrettably** [1] - 12:16
**rejected** [1] - 20:2
**relying** [1] - 19:3
**remain** [1] - 17:5
**REMAND** [1] - 1:21
**remand** [17] - 7:13, 7:17, 7:18, 7:24, 8:22, 8:23, 8:25, 10:19, 12:3, 12:6, 12:11, 16:7, 16:10,

16:20, 16:23, 17:4, 20:25
**remanded** [2] - 19:23, 21:10
**remanding** [1] - 22:23
**remiss** [1] - 13:24
**removable** [2] - 15:12
**removal** [32] - 7:20, 8:2, 8:16, 8:21, 9:3, 9:6, 9:16, 10:5, 10:7, 10:12, 10:19, 12:17, 12:22, 13:7, 13:10, 14:8, 14:16, 14:19, 17:15, 17:24, 18:6, 18:8, 19:1, 19:14, 20:6, 20:9, 20:25, 21:3, 21:15, 22:9, 22:11
**Removal** [6] - 13:21, 14:9, 14:10, 14:17, 14:19, 19:2
**remove** [5] - 16:1, 16:7, 18:7, 20:23, 21:8
**removed** [9] - 7:25, 8:4, 9:25, 16:18, 18:25, 19:11, 20:5, 20:20, 24:15
**removing** [1] - 21:14
**reply** [1] - 2:21
**REPORTER** [1] - 1:25
**representative** [2] - 5:25, 6:7
**representative's** [1] - 6:2
**request** [3] - 4:18, 4:25, 10:25
**requests** [1] - 9:3
**required** [1] - 1:23
**rescheduling** [1] - 3:18
**resident** [4] - 9:6, 17:25, 18:2, 21:3
**residents** [1] - 15:16
**RESPA** [3] - 10:14, 22:15, 23:22
**respectfully** [1] - 23:9
**respond** [4] - 8:9, 8:13, 12:3, 24:10
**reviewed** [1] - 18:23
**reviewing** [1] - 13:24
**rule** [5] - 8:6, 10:21, 17:12, 18:12, 18:24
**Rule** [2] - 4:11, 5:2
**rules** [1] - 22:8
**ruling** [3] - 16:4, 23:4, 23:14

**S**

sale [5] - 6:1, 6:4, 6:6, 6:8, 6:9
sanctionable [1] - 23:25
saw [2] - 18:21, 24:3
scheduled [2] - 6:8, 6:9
se [3] - 2:8, 20:4, 23:5
SE [1] - 1:18
second [3] - 4:6, 14:17, 23:10
Section [3] - 1:23, 21:1, 21:16
section [2] - 16:12, 16:22
secured [1] - 20:13
see [9] - 13:2, 13:21, 14:2, 22:2, 22:15, 22:18, 23:20, 24:8
See [1] - 20:22
seeks [1] - 11:18
sent [2] - 3:13, 14:3
separate [1] - 13:13
serious [1] - 22:8
served [1] - 3:10
service [1] - 8:5
serviced [1] - 6:24
Servicing [3] - 2:1, 2:5, 11:13
SERVICING [1] - 1:3
set [6] - 4:15, 6:2, 6:5, 6:6, 18:25, 23:5
sets [2] - 14:19, 14:20
setting [2] - 17:24, 23:14
settlement [4] - 6:18, 6:19, 6:22, 9:24
seven [1] - 5:13
shall [1] - 19:8
sheet [1] - 14:23
SHERIDAN [1] - 1:12
short [1] - 4:18
shortly [1] - 7:20
show [1] - 19:19
side [1] - 18:22
sign [1] - 22:25
signed [1] - 5:16
significant [1] - 5:19
simple [2] - 3:19, 4:9
simply [3] - 3:4, 7:5, 10:11
situation [1] - 9:2
six [2] - 4:16, 5:12
so-called [1] - 18:12
solely [1] - 12:18
someone [1] - 4:3
somewhat [2] - 5:8,
24:13
Sorry [1] - 10:4
sorry [6] - 10:10, 15:4, 15:6, 15:20, 17:12, 18:16
sort [2] - 5:7, 9:14
sorts [1] - 6:15
speaks [1] - 2:21
specific [1] - 14:20, 24:14
Specifically [1] - 20:5
specify [1] - 10:12
stamped [2] - 5:14, 5:15
standard [1] - 4:17
start [1] - 2:3
STATE [1] - 1:9
state [26] - 7:21, 7:24, 8:5, 8:12, 11:19, 12:18, 13:17, 15:13, 16:1, 17:5, 17:11, 17:12, 18:5, 19:23, 20:19, 21:1, 21:3, 21:7, 21:10, 21:14, 21:20, 21:22, 21:23, 22:21, 22:23, 24:11
State [3] - 9:9, 18:3, 22:20
states [2] - 16:17, 17:24
States [4] - 10:9, 19:10, 20:20, 20:21
STATES [1] - 1:1
statute [8] - 9:18, 9:19, 10:11, 17:3, 17:16, 17:19, 22:14
statutes [1] - 18:7
statutory [1] - 18:14
stays [1] - 19:12
still [6] - 9:10, 10:16, 10:20, 15:10, 15:17, 17:4
STREET [1] - 1:9
strict [1] - 12:9
strike [3] - 3:4, 7:6, 24:3
striking [1] - 5:8
subject [16] - 8:25, 9:7, 10:16, 11:15, 12:11, 12:14, 13:14, 15:17, 16:4, 16:25, 17:1, 17:3, 17:10, 17:21, 21:22
submit [2] - 6:3, 7:2
substantive [2] - 21:20, 21:23
sufficient [1] - 15:25
suit [1] - 20:1
summary [4] - 5:7, 11:8, 11:9, 19:22
summons [1] - 20:3
Superior [8] - 14:15, 14:16, 20:1, 21:14, 21:18, 24:8
suppose [1] - 13:23
surprised [1] - 18:10
surprisingly [1] - 6:17
sustain [1] - 22:19

**T**

Taylor [1] - 20:22
terms [1] - 6:22
themselves [1] - 12:1
Therefore [1] - 21:15
therefore [3] - 9:13, 17:17, 23:12
thereof [1] - 5:11
They've [2] - 5:12, 5:18
Third [4] - 16:16, 16:21, 18:11, 23:10
three [1] - 16:19
TILA [2] - 9:23, 10:14
timely [3] - 5:1, 8:4, 16:10
Title [1] - 1:23
TO [2] - 1:21
today [1] - 2:23
Today's [1] - 3:18
took [1] - 22:9
traditional [1] - 11:21
transcript [2] - 23:16, 24:22
Trask [1] - 21:8
treaties [1] - 19:10
Tree [11] - 2:1, 2:5, 5:11, 5:25, 6:8, 6:12, 6:16, 11:13, 20:15, 20:16, 24:6
TREE [1] - 1:3
TRENTON [1] - 1:10
true [1] - 1:23
truly [2] - 6:11, 7:3
Truth [3] - 9:23, 22:15, 23:21
two [5] - 4:23, 5:12, 13:13, 14:8, 22:7
type [1] - 17:8
types [1] - 19:21
Typically [1] - 10:13

**U**

U.S [3] - 1:13, 1:25, 20:23
U.S.C [11] - 1:23, 9:20, 10:6, 13:8, 13:19,
15:11, 20:18, 20:22, 21:1, 21:2, 21:16
under [14] - 4:11, 11:18, 16:1, 16:12, 16:18, 17:22, 18:6, 19:5, 19:9, 19:20, 21:16, 22:4, 22:9
underlying [3] - 8:19, 20:10, 21:9
understandable [1] - 22:9
undisputed [1] - 21:13
unfair [1] - 6:21
unique [1] - 24:13
UNITED [1] - 1:1
United [4] - 10:8, 19:10, 20:20, 20:21
untimely [8] - 3:5, 3:6, 4:20, 7:6, 12:6, 18:18, 18:21
unusual [1] - 5:10
unusually [1] - 6:12
up [2] - 9:1, 12:11

**V**

verbatim [1] - 10:5
versus [1] - 2:1
violated [3] - 17:17, 18:13, 22:14
violates [1] - 5:1
violation [1] - 18:15
violations [8] - 9:24, 22:15, 22:16, 23:22, 23:23, 23:25
Vs [1] - 1:5

**W**

waited [1] - 16:19
waivable [1] - 18:17
waive [1] - 18:21
waived [2] - 16:18, 19:5
waiver [1] - 18:11
Welcome [1] - 2:15
whole [1] - 17:23
wish [3] - 2:18, 7:15, 12:3
written [1] - 23:13

**Y**

years [1] - 5:12
York [1] - 2:13