NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREEN TREE SERVICING, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>DAVID CARGILLE and JULIE CARGILLE, et al.<br><br>        Defendants. | Civil Action No.: 15-cv-0938 (PGS)(LHG)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This motion comes before the Court on Plaintiff/Counterclaim Defendant Green Tree Servicing LLC's motion to dismiss the counterclaims of David and Julie Cargille (ECF No. 47).

This is a foreclosure action brought by Plaintiff Green Tree Servicing LLC against Defendants David and Julie Cargille. Green Tree Servicing LLC is now known as Ditech Financial LLC (hereinafter "Ditech"). The Cargilles' answer, affirmative defenses, and counterclaims are set forth in a 123 page document.[1] (ECF No. 35). Generally, Ditech argues that the Cargilles' counterclaims ramble on, and also does not set for a clear plain statement of a cause of action, among other defenses.[2]

---

[1] This is the amended version of a document filed as a Complaint in 2016. On April 29, 2016, The Cargilles filed their initial Complaint bearing Civil Action No. 16-2433. The two cases were consolidated on December 20, 2016 and the Court ordered that the parties may file their motions to dismiss with regard to the Cargilles' Answer and Counterclaim. (ECF No. 33). The Cargilles filed an Answer, Affirmative Defenses and Counterclaims on January 18, 2017 (ECF No. 35).

[2] When this document was filed, the Cargilles were pro se plaintiffs. Although Mr. Cargille is a non-practicing attorney, his allegations were reviewed liberally. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It is to be noted that the Cargilles are no longer pro se as an attorney appeared on their behalf on March 6, 2018 (ECF No. 70).

1

I.

In their counterclaim, the Cargilles sue Ditech and other parties who the Cargilles refer to as a "counterclaim defendants."[3] These new parties include (1) Nationwide Title (NTC); (2) Safeguard Properties Management, LLC; (3) Safeguard Real Estate Properties, LLC; (4) Safeguard Realty Management of New York, Co.; (5) New York Field Servicing; (6) KML Law Group, P.C.[4]; (7) Erika Lance; (8) Christopher Jones; (9) Ronald Simpson and (10) John Doe (fictitious parties). As such, there is a counterclaim against Ditech and a third party complaint against the aforementioned parties. Fed. R. Civ. P. 14(a). Since Ditech is the only moving party. I will refer to the Cargilles' pleadings as a counterclaim.

In the introduction to their counterclaim, (Counterclaim, ECF No. 35 ¶¶ 1-6) the Cargilles seek damages, and declaratory and injunctive relief from (a) Greentree Servicing (Ditech) due to the "recklessness disregard for truth . . ." by GMAC Mortgage, LLC (*Id.* ¶ 2); (b) all of the counterclaims-defendants under the Fair Debt Collection Practices Act (FDCPA) for abusive deceptive practices including Ditech; and (c) for breach of Florida's Deceptive and Unfair Trade Practices Act.[5]

II.

The Cargilles aver that they purchased a house in Cranbury, New Jersey in 2003 and financed the purchase with a loan and mortgage from GMAC (*Id.* ¶ 44). The Cargilles allege that since that date, they have paid GMAC roughly $240,000 (*Id.* ¶45). They further allege that their debt is substantially paid off or settled, and that the "debt" is still controlled by GMAC Corp., and

---

[3] As the rules of court provide, a pleading against a new party by a defendant is a third party complaint. Fed. R. Civ. P. 14(a).
[4] This Court granted KML's motion to dismiss on March 19, 2018 (ECF No. 72).
[5] This Count may be solely against Nationwide Title because it is the only Counterclaim Defendant from Florida, but this will be resolved through motion practice.

2

not Ditech (*Id.* ¶¶ 46-47). According to the Cargilles, Ditech has admitted that "it does not own the debt" on six occasions (*Id.* ¶ 50). As a result of same, the Cargilles "dispute [Ditech]'s claim that it owns the debt" (*Id.* ¶ 55), or that Ditech holds the mortgage upon which foreclosure proceeded. The Cargilles further allege that in 2013 Ditech "intentionally issued ... a fraudulently notarized, robo-signed alleged assignment of the mortgage," and that the 2013 forged assignment was robo-signed by a processing clerk. (*Id.* ¶¶ 56-57).

In addition to the 2013 forged assignment, Plaintiff claims that a Pennsylvania notary, Thomas Strain, notarized a 2008 assignment from MERS to GMAC, LLC when the principal was not present. (*Id.* at ¶¶ 60-61)

The Cargilles contend that their loan was securitized through an entity called FNMA, and that FNMA transferred the note to a holding company or trust known as "Holdco." (Counterclaim, ECF No. 35 ¶¶ 66-70). Ditech avers that Holdco has "legal title to the securitized notes." (*Id.* ¶ 71). However, according to the Cargilles, their securitized note was never transferred from GMAC to FNMA (*Id.* ¶ 84).

In September 2007, Mr. Cargille was unemployed and due to his unemployment he defaulted on the mortgage. (*Id.* ¶ 90). In 2008, Phelan Hallinan executed and issued "a purported assignment of the Mortgage from MERS to GMAC, LLC." (*Id.* ¶ 92) This 2008 assignment was notarized by Thomas Strain. According to the Cargilles, the person authorized to assign the mortgage was Judith Romano, and she did not sign the assignment either personally or electronically (¶¶ 90-96). At some point, Phelan Hallinan had re-executed more than 2,000 assignments (*Id.* ¶ 99). As a result, the Cargilles allege that GTS (Ditech) is now enforcing a fraudulently notarized assignment of the mortgage (*Id.* ¶ 103), and the 2008 assignment was executed without any authority from GMAC or from Holdco (*Id.* ¶ 108).

3

The Cargilles assert that Phelan Hallinan electronically submitted the fraudulent 2008 assignment to the Mercer County Clerk (*Id.* ¶ 123). The Cargilles further aver that the "Clerk's recording staff was unable to verify the pen and ink, the physical nature of the signatures", and as a result, the 2008 assignment "should be given no evidentiary deference . . ." (*Id.* ¶¶ 123-124).

On October 29, 2008, the Cargilles and GMAC settled the 2008 foreclosure action (*Id.* ¶ 133). The settlement included a cash payment. Thereafter, the Cargilles "entered into a new, unsecured loan with GMAC Mortgage, LLC." (*Id.* ¶ 134). After the settlement, the Cargilles continued to make payments to GMAC, LLC in excess of $150,000 "on the original debt." (*Id.* ¶ 143-144).

On April 4, 2012, GMAC, LLC entered into a consent judgment that involved negotiations with robo-signing banks (Counterclaim, ECF No. 35 ¶ 145). The Cargilles contend that the consent judgment is binding on Ditech (*Id.* ¶¶ 146-147). As part of the 2012 consent judgment, GMAC, LLC was obligated to extend a "pre-approved loan modification offer. . . to debtors who had defaulted." (*Id.* ¶ 150). The Cargilles claim that their note and mortgage "was within the scope of the 2012 Consent Agreement." (*Id.* ¶ 152). No such loan modification package had been forwarded to the Cargilles. (*Id.* ¶ 154).

According to the Cargilles, in September 2012, they "stopped making payments to GMAC, LLC", but they made payments to Nationstar Mortgage (*Id.* ¶ 157).

In October, 2012, a GMAC related company established an investment trust for issuing mortgage-backed securities secured for certain notes. (*Id.* ¶ 160). The Cargilles' note was acquired by the investment trust. (*Id.* ¶ 161). On January 1, 2013, GMAC, LLC sent the Cargilles a notice of intent to foreclose that was allegedly defective under the provisions of the New Jersey Fair Foreclosure Act. (*Id.* ¶¶ 163-168).

4

On February 1, 2013, the Cargilles allege that Ditech acquired GMAC's loan servicing rights. (*Id.* ¶ 169). The Cargilles were in default and the principal owed was $240,442.85. Ditech offered a loan modification program wherein the Cargilles would make three monthly payments of $1,533.95 to qualify. (¶ 173). The Cargilles made the three payments; but rejected the loan modification because the principle amount due was raised to $398,000 (approximately) when the original debt was $240,000 (approximately) and other conditions were also imposed (¶¶ 188-191). In addition, the Cargilles aver that Ditech failed to provide proof that Ditech held title to the note and mortgage. (¶ 201).

The Cargilles further allege that the 2013 Assignment is fraudulent. According to the counterclaim, "GTS [Ditech] unilaterally instructed a mortgage assignment company, Nationwide Title Clearance . . . to prepare a purported assignment of the Mortgage from GMAC to GTS [Ditech]". (*Id.* ¶ 204). This assignment is like the MERS to GMAC assignment because it is a robo-signed document. In addition, the assignment identifies Danielle Burns as a vice president of GTS when she is employed by Nationwide Title. (¶ 207).

In a section of their counterclaims captioned "the 2015 CFPB-GTS Settlement", the Cargilles note that the Federal Trade Commission (FTC) took action against GTS for mistreating mortgagors by delaying short sales, and demanding payments before providing loss mitigation programs as well as other unscrupulous operations. (*Id.* ¶ 338). Thereafter, according to the Cargilles, the District Court of Minnesota enjoined GTS practices, and entered a monetary judgment that was to be distributed to consumers (*Id.* ¶¶ 338-347). The counterclaim does not allege whether the Cargilles' note and mortgage was at issue before the Minnesota District Court.

II.

The Counterclaim alleges seven causes of action. (*Id.* ¶¶ 519-577). They are (1) breach of

contract; (2) breach of covenant of good faith and fair dealing; (3) fraud; (4) constructive fraud; (5) violation of the New Jersey Consumer Fraud Act; (6) FDCPA violations; and (7) violation of the Florida Deceptive and Unfair Trade Practices Act. (*Id.* ¶¶517-577).

III.

Generally, a complaint may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). On such a motion, the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d. Cir. 2000), cert. denied, *Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). The pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz,* 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice &

Procedure: Civil 2d § 1357 at 340).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

In addition, the Cargilles must comply with Fed. R. Civ. P. 8(a). That is, Plaintiff must assert a clear plain statement of a cause of action. As a preliminary matter, given the length and confusing manner in which the counterclaims are drafted, there are areas of the counterclaim that assert conclusory statements of facts. *Iqbal* at 678. For example, there are allegations concerning a Congressional hearing (¶¶ 454-509); but there are no facts alleged directly relating the Cargilles' note and mortgage to the matter discussed at the Congressional Hearing. Although some unscrupulous practices may have been discussed; there are no precise facts alleged to constitute a cause of action.

In another area of the counterclaim, the Cargilles discuss a Report from the Legal Services of New Jersey to the New Jersey Supreme Court (¶¶ 510-18) concerning the practices of mortgage services; but none of the facts in that Report concern the specific facts of the Cargilles' note and mortgage. As such, that Report is conclusory.

Lastly, the Cargilles allege facts concerning the 2015 CFPG-GTS Settlement (¶¶338-47). However, the Cargilles do not allege that any of those facts about the settlement apply to their note and mortgage or their causes of action. As such, they are conclusory.

In a different area of the counterclaim, the Cargilles discuss "other homeowners" as if they are asserting some type of class. The reference is made several different paragraphs of the counterclaim (Id. ¶¶519-577); however, no class action is alleged. Thus, the Court strikes "other homeowners" from the counterclaim.

Having narrowed the counterclaim, it is reviewed to determine whether it sets forth a clear plain statement of a cause of action. As noted above, the causes of action for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing are ambiguous for several reasons. First, the Cargilles make no assertions as to a particular contract, section of a contract, loan modification, or settlement that was breached by Ditech. Instead, the Cargilles allege that all of the Counterclaim Defendants breached all of the agreements. There is no reference to which specific provision of which agreements, if any, were breached. As such, the allegations of Count I and Count II are vague, and do not set forth a clear plain statement of a cause of action. To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract, and that the plaintiff sustained damages a result. *Murphy v. Implicito*, 920 A.2d 678,689 (N.J. Super. App. Div. 2007). Again, from reviewing the counterclaim, one cannot discern which agreement Ditech is alleged to have breached.

For example, the Cargilles assert conclusory statements without any underlying facts to support their cause of action. The Cargilles allege (a) that they "and other homeowners entered into various contractual agreements with counterclaim defendants that counterclaim defendants breached;" (b) the Cargilles "and other homeowners entered into binding residential mortgage agreements with counterclaim defendants" (*Id.* ¶521); (c) the counterclaim defendants "breached . . . by foreclosing on loans that were not in default" (*Id.* ¶523) (d) that counterclaim defendants

breach such agreement "by wrongfully denying the existence of the mediation agreements" (*Id.* ¶ 527); (e) the Cargilles allege that Counterclaim Defendants "breached an implied term that required them to extend offers for permanent modifications . . . following [Cargilles] and other homeowners' performance under the trial modification programs" (*Id.* ¶¶ 528); (f) the Cargilles allege "Counterclaim Defendants entered into binding settlement agreements with [the Cargilles] and other homeowners that counterclaim defendants breached" (*Id.* ¶ 529); (g) the Cargilles claim that the Counterclaim Defendants failed to provide the Cargilles and other homeowners "with further writings memorializing applicable settlement agreements. . ." (*Id.* ¶ 532). None of the examples ((a) through (g) above) are supported by facts or identify a specific contract.

The same argument applies to Count II of the counterclaim which alleges breach of covenant of good faith and fair dealing. Generally, the Complaint does not allege the precise agreement violated, and as such it is impossible to imply a covenant of good faith and fair dealing into a contract that is not specifically alleged. *See Block v. Seneca*, 221 F. Supp. 3d 559, 581 (D.N.J. 2016). As such, Count II is dismissed.

With regard to Count III of the counterclaim (fraud and intentional misrepresentation), there are sufficient facts to support the allegations. In its reply, Ditech argues that the Cargilles have failed to identify any misrepresentations, thus failing to plea the necessary elements for the claims.

To allege a claim for common-law fraud, the Cargilles must meet five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350, 367 (1997). Additionally, Rule 9(b) provides that "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake." The requirements of Rule 8 apply even where the Rules command particularity, as in the pleading of fraud under Rule 9(b). *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996). Therefore, where alleging fraud, the Cargilles must state the circumstances constituting fraud with particularity, but must still endeavor to make their allegation clear and concise. "Pleadings containing collectivized allegations against "defendants" do not suffice." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).

Notwithstanding the meager amount of facts in support of this claim, the Court finds that the alleged improper notarization of an assignment, combined with the "robo-signed" assignment, and the misidentification of Danielle Burns and her employers, provide sufficient facts to survive a motion to dismiss.

Count IV of the counterclaim sets forth the cause of action of constructive fraud. Within the Cargilles' brief, they concede that certain allegations concerning negligent processing of loan modification applications and the failure to properly notice the Cargilles should have been part of the cause of action for breach of implied covenant of good faith and fair dealings, the Court dismisses Count IV of the counterclaim for the same reasons it dismissed the count for breach of the implied covenant of good faith and fair dealing (Count II).

Count V alleges a violation of the New Jersey Consumer Fraud Act (CFA) (Counterclaim, ¶560-563). In order to state a valid claim for violation under the CFA, the Cargilles must allege: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiffs ascertainable loss." *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 2005).

Although Count V does not refer back to any specific facts, the counterclaim alleges sufficient examples of deceptive acts to set forth a plausible cause of action (*See* Counterclaim, ¶268).

Count VI alleges violations of the Fair Debt Collection Practices Act (FDCPA). Ditech's argument with regard to this Count is twofold. First, Ditech argues that it is not a debt collector under the FDCPA, thus the allegation does not apply to it. Ditech further argues that the statute of limitation of the claim, based on the allegations provided by the Cargilles, has expired.

The provisions in the FDCPA generally apply only to "debt collectors." *Police v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). 15 USC § 1692a (6)(a). Generally, Ditech argues "the law is well-settled that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 718 (E.D.Va 2003); *see also Beard v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 128401, *6 (M.D. Pa. Sept. 24, 2015) (holding that mortgagors, creditors, and mortgage servicing companies are generally not debt collectors and are therefore statutory exempt). The term also does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). "The servicer of a residential mortgage loan is not a 'debt collector' if the loan in question is not in default when acquired by the servicer." *Stolba v. Wells Fargo & Co.*, 2011 U.S. Dist. LEXIS 87355, *5 (D.N.J. Aug. 8, 2011). Ditech began servicing the loan on June 14, 2013. The Cargilles' defaulted on the loan in

2012. Thus the mortgage when assigned to Ditech was already in default, making Ditech a debt collector for purposes of the FDCPA.

With regard to the statute of limitations, Ditech argues that the Cargilles are alleging a violation in connection with notices sent in 2013 and 2014, more than one year prior to the date when their claim was brought before the Court. "[C]ivil actions for violation of the FDCPA must be brought 'within one year from the date on which the violation occurs.'" *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 338 (D.N.J. 2009) (quoting 15 U.S.C. § 1692k(d)). The Cargilles initially raised an FDCPA claim when they filed a complaint on April 29, 2016, in what was previously a separate law suit. There, they alleged numerous misrepresentations and omissions throughout the years, including some that allegedly occurred in May 2015 (Counterclaim, ¶¶ 358-360). Those allegations are set forth under a section called "GTS's Post-Suit Debt Collection Falsehoods" and allege the following:

> 358. On May 18, 2015, Christopher Jones, a GTS representative in GTS's "Back-End Collections" department, falsely told Mr. Cargille that, according to GTS's computer system, a foreclosure sale date of August 27, 2015, had already been set. Mr. Jones said that because "the sell date is coming quickly", the Cargilles should submit a new loan-modification application to GTS "to save your [our] home".
>
> 359. On May 21, 2015, another GTS representative, Sharon Cole confirmed that a sale date had been scheduled for August 27, 2015, and that GTS was "in the process of trying to get it sold." Ms. Cole stated, "We're worried about that [foreclosure sale] .... we are really trying to get you going for some kind of loss mitigation."
>
> 360. On May 29, 2015, still another GTS representative, Jefferson Ford, confirmed that the anticipated sale date is August 27, 2015, and that the Cargilles should file the new loan-modification application as quickly as possible in order to avoid the sale.

This Count remains applicable only to alleged wrongful actions that occurred within one year prior to the April 29, 2016 filing.

In Count VII, Ditech argues that the Florida Deceptive and Unfair Trade Practices Act

(FDUTPA) does not apply in this matter as it involves a New Jersey Property in a New Jersey case. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Ditech is a foreign corporation with its principal place of business located in Minnesota, Plaintiffs are citizens of New Jersey, and the property is located in New Jersey. Counterclaim Defendant Nationwide Title Cleaning ("NTC") is the only party with a connection to Florida as it is a Florida corporation. This Count may be directed to that party. However, for purposes of this motion, the Court dismisses Count VII against Ditech.

## ORDER

This motion having been brought before the Court on Counterclaim Defendant Ditech's motion to dismiss the Counterclaim Plaintiffs David and Julie Cargille's counterclaims (ECF No. 47); and the Court having read the submissions of the parties; and for good cause having been shown;

IT IS on this 11th day of April, 2018;

ORDERED that Counterclaim Defendant's motion to dismiss is granted in part and denied in part (ECF No. 47) as follows:

COUNT I, II, IV, VII are dismissed without prejudice against Ditech for failure to state a claim;

COUNT VI is dismissed with prejudice as to all allegations that occurred prior to April 29, 2015; however, COUNT VI will move forward with regards to allegations that occurred after April 29, 2015.

The motion to dismiss is denied with regards to COUNT III.

Plaintiffs may amend the Counts dismissed without prejudice within 30 days from the date of this Order.

_____
PETER G. SHERIDAN, U.S.D.J.