UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREEN TREE SERVICING, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>DAVID CARGILLE and JULIE CARGILLE, et al.<br><br>                Defendants. | Civil Action No.: 15-cv-0938 (PGS)(LHG)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This motion comes before the Court on a motion for reconsideration (ECF No. 77) filed by Plaintiff/Counterclaim defendant Green Tree Servicing, LLC, now known as Ditech Financial LLC (hereinafter "Ditech").

The facts and procedural history of this matter have been set forth in great detail in this Court's prior decision, and they will not be repeated here again. (*See* ECF No. 75). The present motion asks the Court to reconsider the Order filed on April 12, 2018, (ECF No. 75), which partially dismissed Defendant/Counterclaim plaintiffs David Cargille and Julie Cargille's Counterclaims (hereinafter "the Cargille's"). Pursuant to the Order:

    Counts I, II, IV, and VII were dismissed without prejudice,

    Count VI (violation of the FDCPA) was dismissed with prejudice for all allegations that occurred prior to April 29, 2015, but allegations occurring after that date were allowed to proceed,

    Counts III (fraud) and V (violation of the New Jersey Consumer Fraud Act (NJCFA)) were allowed to proceed.

Ditech now asks that the Court consider additional case law, which would support the

dismissal of Counts III, V, and VI in their entirety.

I

Motions for reconsideration are governed by Fed. R. Civ. P. 59(e) and L. Civ. R. 7.1(i). The "extraordinary remedy" of reconsideration is "to be granted sparingly." *A.K. Stamping Co., Inc., v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (quoting *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). The Rule "does not contemplate a Court looking to matters which were not originally presented." *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623, 634 (D.N.J. 1996) (quoting *Florham Park Chevron, Inc., v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988)).

The Third Circuit has held that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986). "Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc.*, 935 F. Supp. at 516 (citing Wright, Miller & Kane, Fed. Practice and Procedure: Civil 2d § 2810.1). Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly," *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986); and only when "dispositive factual matters or controlling decisions of law" were brought to the Court's attention but not considered. *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987); *see also G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990).

II

Count III of the counterclaim alleges fraud and Count V of the counterclaim alleges a violation of the NJCFA. Ditech argues that these claims should be dismissed because the Cargilles have no standing to challenge an assignment to which they are not a party to, and are unaffected by. In support of this argument, Ditech cites *Giles v. Phelan, Hallinan & Schmieg*, LLC, 901 F. Supp. 2d 509, 532 (D.N.J. 2012). In *Giles*, the court held that the plaintiffs "could not challenge the validity of assignments transferring Plaintiff's mortgages from one holder to the another." *Id.* (quoting *Ifert v. Miller*, 138 B.R. 159, 163 (E.D. Pa. 1992) *aff'd*, 981 F.2d 1247 (3d Cir. 1992). The *Ifert* court explained, "[t]he fact that the assignors might have a valid cause of action against the assignee because of fraud practiced upon them did not affect the legal title of the assignee, and could not be proved by a defendant in an action on the assignments." *Ifert*, 138 B.R. at 166 (quotation omitted). Instead, those claims "can be raised only 'at the option of the injured party.'" *Id.* (citing 6A C.J.S. § 58). "Plaintiffs may not, therefore, challenge any assignments to which they were not a party . . . ." *Giles*, 901 F. Supp. 2d at 532.

As stated in this Court's previous opinion, the Counts alleging fraudulent behavior by Ditech were allowed to move forward based on the "alleged improper notarization of an assignment, combined with the 'robo-signed' assignment, and the misidentification of Danielle Burnes and her employees." After reviewing the *Giles* opinion, the Court is satisfied that this Count should be dismissed. Since this same evidence constituted support for Count V and VII as well, these Counts too should be dismissed, because the allegations relate to an assignment to which the Cargilles were not a party. Accordingly, Counts III, V, and VII are dismissed in their entirety.

The Court next considers Count VI of the counterclaim, the FDCPA claim. The FDCPA

applies only to "debt collectors," defined as

> any person (1) who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts (the 'principal purpose' definition); or (2) who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another (the 'regularly collects for another,' or 'regularly collects,' definition).

*Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) (quoting 15 U.S.C. § 1692a).

With regards to the FDCPA counterclaim, Ditech argues that the Supreme Court's holding in *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017) established that a company may collect a debt that is purchased for its own account, without triggering the statutory definition of "debt collection" under the FDCPA. There, the Supreme Court examined the "regularly collects for another" definition of debt collector. More specifically, the Supreme Court posed the question, "what if you purchase a debt and then try to collect it for yourself – does that make you a 'debt collector' too?" *Id.* Ultimately, the Supreme Court ruled that " . . . a debt purchaser . . . may indeed collect debts for its own account without triggering the statutory definition in dispute." *Id.* at 1722. The Supreme Court explained that the plain language of the statute did not apply to a "debt owner seeking to collect debts for itself." *Henson*, 137 S. Ct. at 1721. The Court further explained,

> Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'

*Id.* Because the bank in *Henson* collected debts for its own account, it did not meet the "regularly collects for another" definition of debt collector. *Id.* at 1721-22; *see also Tepper v. Amos Fin., LLC*, 898 F.3d 364, 367 (3d Cir. 2018).

The day before this Court held arguments for the motion for reconsideration, the Third Circuit issued its opinion in *Tepper*, which examined the "principal purpose" definition of debt

collector. There, the court explained that the FDCPA does not apply "to all entities who collect debts," and instead, an entity is a debt collector under the FDCPA if its "principal purpose of business is the collection of any debts . . . regardless whether the entity owns the debts it collects." *Tepper*, 898 F.3d at 371. Thus, if the entities "principal business is to collect the defaulted debts they purchase . . . it is—a debt collector . . . [and] the Act applies." *Id.*

In *Tepper*, defendant Amos was a business whose sole purpose was to purchase debts entered into by third parties, and to attempt to collect those debts. *Id.* at 368-69. Accordingly, because "[i]ts admitted sole business is collecting debts it has purchased" the court found that "[i]t can be no plainer that Amos 'uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts.'" *Id.* at 371 (quoting § 1692a(6)).

Thus, "following *Henson*, an entity that purchases debts and then seeks to collect them for its own account is ineligible for the second definition [the regularly collects definition] because it is limited to those who regularly collect debts due a third party. By contrast, the first definition applies to "collection of any debts" so long as that activity is the entity's "principal purpose." *Id.* (citing *Tepper v. Amos Fin., LLC*, No. 15-5834, 2017 U.S. Dist. LEXIS 127697, at *8 (E.D. Pa. Aug. 9, 2017)).

In the April 12 Order, this Court found that because Ditech became the servicer of the Cargilles' loan after the Cargilles defaulted on their mortgage loan, it is considered a debt collector under the FDCPA. However, as explained by *Henson*, the Supreme Court abrogated the default test. Thus, in considering whether the Cargilles' FDCPA claim survives, the Court must consider whether Ditech is a debt collector under the "principal purpose" definition, or the "regularly collects for another" definition.

5

The Cargilles first argue that, because Ditech has self identified as a "debt collector" on correspondence, it is clearly a debt collector and falls under the Act's definition of debt collector. Cargille Br., ECF No. 96, at 5-6. Regarding the "principal purpose definition" of debt collector, the Cargilles argue that because Ditech is a mortgage servicer, its principal purpose is the collection of debts for the lender. *Id.* at 7. Specifically, the Cargilles argue that "'Servicing' a mortgage account is just another name for collecting a debt." *Id.* Regarding the "regularly collects for another" definition, the Cargilles argue that Ditech does not own their loan, and instead services it for another, and for that reason, it is regularly collecting the debt of another, and meets that definition of debt collector under the Act. *Id.* at 9.

In response, Ditech argues that it is not a debt collector under either definition. Ditech asserts its principal purpose is not the collection of debts, but instead is mortgage loan servicing, which encompasses "managing the mortgage loan account on a daily basis, including collecting and crediting periodic loan payments, managing escrow accounts, or enforcing the terms of the mortgage or note." Ditech br., ECF No. 97, at 6 (citing N.J.S.A. § 2A:50-55). Regarding the regularly collects definition, Ditech argues that it is not a debt collector because it owns the mortgage loan, and thus cannot be collecting a debt for another.

Upon consideration and review of the Supreme Court's decision in *Henson*, and the Third Circuit's decision in *Tepper*, this Court concludes that Ditech is not a debt collector under either the "principal purpose" definition, or the "regularly collects for another" definition of debt collector under the Act. Here, Ditech purchased the loan after the Cargilles defaulted, and was collecting the loan for its own account, not the account of another. Further, the Cargilles have offered no support for their assertion that "loan servicer" is synonymous with "debt collector." Thus, upon reconsideration and review, Defendant's motion is GRANTED as to Count VI.

## ORDER

This motion having been brought before the Court on Plaintiff/Counterclaim defendant Ditech's motion for reconsideration (ECF No. 77); and the Court having read the submissions of the parties; and for good cause having been shown;

IT IS on this __21__ day of January, 2019;

ORDERED that Plaintiff/Counterclaim defendant Ditech's motion for reconsideration (ECF No. 77) is granted, as follows:

1. Counts III, V, VI, and VII are dismissed with prejudice;

2. Counts I, II, and IV are dismissed without prejudice for the reasons set forth in this Court's Order dated April 11, 2018 (ECF No. 75).

ORDERED that Plaintiff may amend the Counts dismissed without prejudice pursuant to this Court's Order dated April 11, 2018 (ECF No. 75) within 30 days from the date of this Order; and it is further

ORDERED that Plaintiff/Counterclaim defendant Ditech's motion to dismiss (ECF No. 89) is denied as moot.

_____
PETER G. SHERIDAN, U.S.D.J.